UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| DANIEL T. RAMSDELL | ) | Case No. 22-60684-can11 |
| RAMSDELL LAW FIRM, LLC | ) | (Joint Administration) |
| | ) | |
| Debtors. | ) | |

**DEBTORS SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION**
**DATED APRIL 6, 2023**

## ARTICLE I. INTRODUCTION

### 1.1 General

This Plan of Reorganization is presented to you to inform you of the proposed reorganization and restructuring of debts of Daniel T. Ramsdell ("**Ramsdell**") and Ramsdell Law Firm, LLC ("**RLF**") (herein collectively "**Debtors**" or sometimes individually referred to as "**Ramsdell**" or "**RLF**" respectively), and to seek your vote to accept the Plan. **Your rights may be affected and you are encouraged to carefully review the full text of this document, including all Exhibits and attachments, before deciding how to vote on the Plan.**

### 1.2 Confirmation Procedure

**In addition to casting your vote to accept or reject the Plan, you may object to the terms of the proposed Plan. If you wish to object to the adequacy of any disclosures herein or the terms of the proposed Plan, the objection dates will be provided in a separate notice generated by the Bankruptcy Court directing circulation of the Plan, ballots, and applicable deadlines. The Court will issue information on when your ballot is due and the date and time for a hearing on Confirmation of the Plan. Your ballot must be mailed, faxed, or emailed to David E. Schroeder, attorney for Debtor, 3804 S. Fremont Ave., Springfield, MO 65804. Telephone: (417) 890-1000, Fax: (417) 590-8600. Email: bk1@dschroederlaw.com. Your ballot must be received by the deadline set forth in the Court Order approving the circulation of the above-described materials.**

### 1.3 Summary of Plan

The Plan places claims in various classes and describes the treatment each class will receive. Payments and distributions under the Plan will be funded by the Debtors from their projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) projected to be received in the three (3) year period following the effective date of the Plan (the period described in § 1191(c). The Plan provides for Debtors to assign their joint interest in their accounts receivable, work in process, co-counsel contingency fee proceeds to the Subchapter V Trustee for future collection and distribution through the establishment of a deposit account with the Subchapter V Trustee to act as the disbursing agent of Plan payments. The Plan provides for payments to members of the class of secured claims thirty (30) days following the effective date of the Plan. Costs of administration are to be paid on or before thirty (30) days following the effective date of the Plan unless otherwise agreed to or directed by the Court. Priority claims are to be paid in full as allowed. Allowed claims of the class of unsecured claims shall be paid on an annual basis and shall receive a pro rata share

of an annual percentage payment during the three (3) year period. **All creditors should refer to Articles V and VI of this Plan for information regarding the precise treatment of their claims.**

**The values of Debtor's property and the projections stated within this Plan are those of the Debtors and have not been verified or directly or indirectly audited by Debtor's attorney. As a creditor or party in interest your rights may be affected and you are encouraged to carefully review the full text of the Plan including all exhibits and attachments.**

**1.4      Definitions of Certain Terms**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented and defined as listed below:

*Administrative Expenses.* Those expenses entitled to payment pursuant to §§ 507(a)(1), 503(b), and 330 of the Bankruptcy Code which include Chapter 11 Subchapter V Trustee fees and expenses and Debtor's attorney fees and expenses as may be approved by the Court.

*Confirmation.* Shall mean the date and entry by this Court of an order confirming the Plan in accordance with the provisions of the Code.

*Consummation of the Plan.* Shall mean Debtor, as Debtor-In-Possession, making all payments required under the terms of his Chapter 11 Plan pursuant to the Court's order confirming the Plan and following Debtor filing a final report and account; and, if appropriate, filing a motion for discharge pursuant to U.S.C. §§ 1106, and 704; and LR4004-5.

*Effective Date.* The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

*Subchapter V Trustee.* Shall mean Norman Rouse who is currently the duly appointed and acting Chapter 11 Subchapter V Trustee.

**ARTICLE II. BACKGROUND**

**2.1      General Description of Debtors and their Businesses**

On the bankruptcy petition date of December 15, 2022 (the "**Petition Date**"), Ramsdell was 72 years of age and has maintained a license for the practice of law in the State of Missouri since 1977. Ramsdell formed the law firm of RLF on January 5, 2004 and since its initiation has been the sole member and managing member. RLF elected tax status as a Subchapter S Corporation for tax reporting purposes and, as a result, is a "pass through" entity for income tax purposes and does not pay tax on its income and taxes are the liability of Ramsdell. In addition, prior to and on the Petition Date, Ramsdell was also the sole member and managing member of two (2) other operating limited liability companies known as Association of Plaintiff Interstate Trucking Lawyers of America, LLC ("**APITLA**") and Ramsdell Consulting Services, LLC ("**RCS**").

2

**2.2    Legal Practice**

Ramsdell's practice of law focuses in the area of complex plaintiff interstate trucking claims and litigation of which Ramsdell has nationally recognized experience and knowledge focusing in the area of the liability and punitive damages aspects arising out of accidents causing injury or death to plaintiffs. As is sometimes common in complex cases, Ramsdell and RLF would jointly enter into contingency fee agreements with clients in a joint capacity of Ramsdell providing professional personal services and being the identified attorney of record in cases while related professional services were provided and funded by RLF. In addition and on occasion Ramsdell and RLF would enter into joint contingency fee agreements with other counsel as associated or co-counsel in selected cases.

**2.3    APITLA**

To expand on Ramsdell's national recognized experience and knowledge relating to plaintiff interstate trucking claims, on June 19, 2008 Ramsdell formed the entity of APITLA for the purpose of providing litigation support services and marketing solely to attorneys representing plaintiffs in interstate trucking claims. Since inception, Ramsdell has been the sole member and managing member. As a single member LLC, it is a "disregarded entity for tax purposes" and as a result is a "pass through" entity for income tax purposes and does not pay tax on its income and taxes are the liability of Ramsdell. APITLA, under the management of Ramsdell, created a library of litigation support materials from which attorneys could subscribe and have access to by paying annual membership dues. In addition, APITLA would sponsor and conduct specialized seminars nationwide for the benefit of its membership and also to promote cross-marketing and networking.

To fund an expansion of APITLA operations, in 2011 funding was provided as represented by a finance agreement with the Hershewe Law Firm, P.C., Edward Hershewe, and Alison Hershewe (collectively "**Hershewe**") whereby Hershewe made a loan of $350,000.00 available which was to be repaid in the sum of $700,000.00 within five (5) years and represented by a Promissory Note joint and severally made by RLF, Ramsdell, Winnie Ramsdell (then spouse of Ramsdell), APITLA, and Lawyer's Logbook Magazine, LLC (the "**Hershewe Loan**").

**2.4    RCS**

In September of 2018, after Ramsdell recognized the opportunity to be available to attorneys or law firms to function as a trial consultant in trucking liability, Ramsdell formed the limited liability company known as Ramsdell Consulting Services, LLC of which he was and is the sole member and managing member. Like many other attorneys who are hired as expert trial consultants only, while functioning as a trial consultant Ramsdell does not practice law. The purpose of RCS was initially to contract with third parties to provide expert witness litigation trial support on a contract basis (hourly or contingency fee percentage) with attorneys or law firms representing plaintiffs in interstate trucking claims. In addition, Ramsdell utilizes RCS as an entity for administering other business operations of RLF and APITLA through a centralized cash management system to simplify accounting and record keeping for tax purposes whereby proceeds and collections are deposited to RCS and RCS pays the appropriate shared expenses, etc. with the intent to convey consolidated records to Ramsdell's tax preparer. As a single member LLC, it is a "disregarded entity for tax purposes" and as a result is a "pass through" entity for income tax purposes and does not pay tax on its income and taxes are the liability of Ramsdell.

**2.5    Other Entities and Prior Divorce**

On July 29, 1999, Ramsdell and spouse Winnie Ramsdell, formed the entity of DANWIN Properties, LLC ("**DANWIN**") for the purpose of functioning as an entity for holding real estate investments. In early

3

February of 2014, Ramsdell and Winnie Ramsdell separated and subsequently filed a petition for dissolution of their marriage of 44 years. As a result of a judgment of dissolution entered in February 2015, Ramsdell became the sole member and managing member of DANWIN which, at the time, had as its sole remaining asset a single family residence located in Springfield, Missouri. The judgment of dissolution provided that Ramsdell would pay monthly maintenance to Winnie Ramsdell in the amount of $7,000.00 per month in addition to four (4) consecutive annual maintenance payments each in the amount of $60,000.00 with all provisions of the judgment concerning maintenance being non-modifiable. Subsequently on July 16, 2020, DANWIN sold the residence and as of the Petition Date was inoperable and had no assets.

Historically, Ramsdell was the organizer of multiple limited liability companies which were formed primarily for the purpose of reservation and protection of names or acronyms which may or may not have been intended to be utilized in the future. For the most part, the entities were never funded or capitalized and/or were not functioning within four (4) years preceding the Petition Date.

### ARTICLE III. HISTORICAL FINANCIAL CONDITIONS & DEBTORS CHAPTER 11 FILINGS

#### 3.1    Need for Capital or Funding

Due to the complex, complicated, and unique legal issues involved in representing injured parties in complex interstate trucking claims, the cases require extraordinary expenses to be incurred and advanced to prosecute toward settlement, judgment, and/or recovery (discovery, experts, litigation support, etc.). Due to the unpredictable time involved in reaching settlement, judgment, and/or recovery in plaintiff litigation cases, in May of 2016, Ramsdell secured operating capital in the form of a loan from Series 5 – Virage Master, L.P. ("**Virage**") in the amount of $1,000,000.00 with the loan in the name of RLF and personally guaranteed by Ramsdell. Subsequently in October of 2016, an additional loan in the amount of $350,000.00 was made resulting in a restated or amended Promissory Note which consolidated the two principal loans plus accrued and unpaid interest or an aggregate amended Note in the amount of $1,444,630.14 to bear interest at the rate of 22% with a maturity date of October 26, 2024.

#### 3.2    Negative Cash Flow Operations and Other Intervening Events

*Virage Loan and IRS Federal Tax Lien.* Notwithstanding procuring the Virage loans, Ramsdell and RLF suffered from negative cash flow operations in attempting to fund overhead and case expenses. In addition, in November of 2016, Ramsdell received a Notice of Federal Tax Lien for non-payment of 1040 taxes for calendar year 2015 in an aggregate amount of $480,298.00. Unfortunately, during the Virage loan term, several of the Ramsdell cases in which he was involved did not result in Ramsdell receiving the anticipated amounts of recovery and as a result, sufficient fees and resources did not exist for repayment of loans and other obligations. As a result, Virage declared a default in its loan, rejected proposals for extensions and modifications, and initiated a collection petition in the State of Texas in July 2018 and on August 19, 2019 Virage secured a judgment arising from its Motion for Summary Judgment in the amount of $2,407,387.07 in unpaid principal and interest, attorney fees of $11,295.00, an award of court costs, and post-judgment interest at the rate of 18% per annum. Subsequently in November 2019, Virage filed a petition in the Circuit Court of Greene County, Missouri for registration of the Texas judgment and on July 15, 2020 the Greene County Circuit Court entered an order and judgment registering the Texas foreign judgment.

*Virage Garnishment/Interpleader Recovery.* In March of 2021, Ramsdell and RLF represented plaintiffs in an underlying personal injury suit of which Acuity Mutual Insurance Company was the insurer for the defendants. Virage issued a garnishment against Acuity prior to the case being settled or resolved. Prior to any settlement or recovery, the IRS filed a Notice of Levy against Acuity seeking an amount of attorney fees or expenses that may be received by Ramsdell or RLF. Subsequently, in accordance with a settlement

agreement, the amount of attorney fees and expenses to be received by Ramsdell became subject to a petition for interpleader filed by Acuity. As a result of the interpleader action, Acuity paid $285,202.75 into the Greene County Circuit Court. Virage and the IRS entered into an agreement to divide the interplead funds equally which agreement was accepted by the court and the court entered an order on June 1, 2022 allocating the aggregate sum to be divided equally resulting in Ramsdell and RLF receiving nothing.

*Hershewe Loans and Suit.* On or about March 2016, Hershewe made demand and/or declared default with respect to the Hershewe Promissory Note. The matter lingered as Ramsdell believed the Note had been satisfied through an assignment or waiver of Ramsdell's contingency fee interest in a plaintiff's trucking case of which Hershewe received an amount in contingency fee compensation exceeding the balance due on the Promissory Note. Notwithstanding Ramsdell's position of payment or satisfaction, Hershewe initiated a collection petition in the State of Missouri on January 14, 2019 seeking a judgment for principal, interest, and possible attorney fees of approximately $700,000.00 plus interest at the rate of 9% per annum. On October 19, 2022, following a jury trial, Hershewe was awarded a judgment in the amount of $1,188,075.96.

### 3.3    Filing of the Debtors Chapter 11 Cases

As a result of the judgment against both Ramsdell and RLF, the attempts of levy by the IRS, the severely adverse impact of COVID on the revenue for RLF, and the judgment creditors pursuing collection actions, the Debtors were forced to file a Voluntary Petition under Chapter 11 Subchapter V of Title 11 of the United States Bankruptcy Code on December 15, 2022.

### 3.4    Liabilities Scheduled by Debtors or Represented by Proof of Claims

A detail of the liabilities of each Debtor and related security interest or lien is set forth in the table below. The information is taken from Bankruptcy Schedules D and E/F and the Proof of Claims filed in the bankruptcy cases.

| RAMSDELL | | |
|---|---|---|
| **Creditor/Claimant** | **Scheduled Claim/Amount** | **Proof of Claim Reference/Amount** |
| Simmons Bank | (Schedule F)  $8,212.39 | No. 1 / $8,195.05 |
| Ben Steele Properties, LLC | (Schedule F)  $2,283.59 | No. 2 / $3,703.59 |
| Millington, Glass, & Love | (Schedule F)  $70,594.15 | No. 3 / $71,378.15 |
| MO Department of Revenue | --- | No. 4 / $258.25 |
| The Hershewe Law Firm, PC | (Schedule F)  $1,188,075.96 | No. 5 / $1,217,715.16 |
| Edward Hershewe | --- | No. 6 / $1,217,715.16 |
| Alison Hershewe | --- | No. 7 / $1,217,715.16 |
| Bank Card Services/Central Trust Bank | (Schedule F)  $16,255.47 | Nos. 8 & 9 / $16,458.27 |
| Bank of America | (Schedule F)  $11,028.88 | No. 10 / $11,028.88 |
| Truist Bank | (Schedule F)  / Unknown | No. 11 / $230.00 |
| IRS | (Schedule D)  $355,783.04 | No. 12 / $352,509.65 |
| Paul Wacker | (Schedule F)  $10,000.00 | No. 13 / $10,000.00 |
| Winnie Ramsdell | (Schedule E)  $34,160.00 | No. 14 / $44,760.00 |
| Series 5 – Virage Master, LP | (Schedule F)  $3,743,897.39 | No. 15 / $3,825,366.74 |
| Mediacom | (Schedule F)  $247.08 | --- |
| Miller & Associates CPAs & Advisors, LLC | (Schedule F) $9,655.50 | --- |

| RLF, LLC | | |
|---|---|---|

5

| Creditor/Claimant | Scheduled Claim/Amount | Proof of Claim Reference/Amount |
|---|---|---|
| Millington, Glass, & Love | (Schedule F)  $70,594.15 | No. 1 / $71,378.15 |
| The Hershewe Law Firm, PC | (Schedule F )  $188,075.96 | No. 2 / $1,217,715.16 |
| Edward Hershewe | --- | No. 3 / $1,217,715.16 |
| Alison Hershewe | --- | No. 4 / $1,217,715.16 |
| Bank Card Services/ Central Trust Bank | (Schedule F)  $16,255.47 | No. 5 / $16,458.27 |
| Greg Woody | (Schedule F)  $11,463.62 | No. 6 / $9,234.82 |
| Miller & Associates CPAs & Advisors, LLC | (Schedule F)  $ 9,655.50 | --- |
| Series 5 – Virage Master, LP | (Schedule F)  $3,655,582.70 | No. 7 / $3,825,366.74 |
| Northern Summit Technology | (Schedule F)  $38.97 | --- |
| Paul Wacker | (Schedule F)  $10,000.00 | --- |
| Thomson Reuters Headquarters | (Schedule F)  $2,223.40 | --- |

As reflected above, there are duplicative creditors or claims listed or Proof of Claims filed in the bankruptcy cases of Ramsdell and RLF. For purposes of the Plan, it is the joint intention of Debtors to recognize only one claim.

**3.5** **Significant Events During the Bankruptcy Case**

Since the filing of the bankruptcy petitions, the following is a list of significant events:

- **December 15, 2022** – Separate Chapter 11 Petitions filed on behalf of Ramsdell and RLF.
- **December 16, 2022** – Appointment of Norman E. Rouse as Subchapter V Trustee.
- **January 5, 2023** – Application of attorney David E. Schroeder for employment as bankruptcy counsel for Ramsdell and RLF.
- **January 9 and 10, 2023** – Stipulation and Agreed Order regarding scheduling events in both Subchapter V cases.
- **January 23, 2023** – Motion filed in both Subchapter V cases for administrative consolidation.
- **January 25, 2023** – Order entered granting Motion for Joint Administration.
- **January 26, 2023** – Objection filed by creditor Virage to Application for Employment of bankruptcy counsel David E. Schroeder.
- **January 30, 2023** – Objection filed by creditor Hershewe to Application for Employment of bankruptcy counsel David E. Schroeder.
- **March 3, 2023** – Debtors Motion for Order Authorizing Morgan & Morgan Tampa P.A. to Disburse Contingent Fee Compensation Earned by Debtors for the Benefit of the Debtors Estate.
- **March 15, 2023** – Debtors Motion for Extension of Time to File Chapter 11 Subchapter V Plans.
- **March 16, 2023** – Evidentiary hearing on Debtors Motion for Order Authorizing Morgan & Morgan to Disburse Contingent Fee Compensation and Debtors Application for Employment of attorney David E. Schroeder and opposition thereto.
- **March 17, 2023** – Court Order Granting in part, and denying in part, Debtors Motion for Order authorizing Morgan & Morgan Tampa P.A. to disburse contingency fee compensation earned by Debtors for the benefit of Debtors estate.
- **April 5, 2023** – Debtors Objection to Virage Proof of Claim as secured status and amount.
- **April 6, 2023** – Debtors Objection to Hershewe Proof of Claim as secured status.

**ARTICLE IV. PROPERTY VALUATIONS & REPORTED INCOME**

**4.1** **Valuation of Property of Ramsdell**

6

Ramsdell, on the Petition Date, owned and possessed limited personal assets primarily consisting of household goods, one vehicle, selected guns, personal bank accounts, and his membership interest in the business entities of RLF, APITLA, and RCS. RLF, on the Petition Date, owned and possessed limited business assets primarily consisting office furniture, computer equipment, and file cabinets and supplies. Attached to this Plan labeled **Exhibit A** is a schedule reflecting a description of the separate assets of Ramsdell and RLF, their valuation, and applicable exemptions as taken from Schedule A/B and C.

**4.2    Reported Income**

*Pre-Petition Income.* Income received by Ramsdell and RLF and imputed to Ramsdell was reported in Ramsdell's individual Bankruptcy Schedules with the Schedule recapping reported income for tax years 2019, 2020, and 2021. A copy of the recap as attached to the Schedules is set forth in **Exhibit B** attached hereto. Debtors have not compiled or engaged an accountant or tax preparer for completing income reports or tax reports for tax year 2022. During tax year 2022, Ramsdell received monthly social security annualized in the amount of $35,860.00 and periodic owner draws from APITLA. In addition, Ramsdell and RLF will be required to report or account for indirectly receiving the funds derived from the personal injury lawsuit which was the subject of the interpleader action wherein Virage and the IRS equally divided said sum ($285,202.76) pursuant to the order of the court resulting in Ramsdell and RLF receiving no cash payment (see Section 3.2 herein).

*Post-Petition Income (Monthly Operating Report Summary).* Debtors have filed monthly operating reports during the bankruptcy proceedings and Debtors have prepared a summary for review and consideration in connection with the Plan which summary is attached hereto as **Exhibit C**.

*Extraordinary Post-Petition Income.* Pursuant to Debtors association as co-counsel with Morgan & Morgan Tampa, P.A. ("**MMT**") for undisclosed plaintiffs in various plaintiff litigation cases, on or about January 24, 2023, MMT received client authorization for settlement with respect to four (4) mutual clients and claimants which recognized Ramsdell contingency fee compensation in the aggregate amount of $3,419,456.35. The settlements were subject to approval of the applicable state Circuit Court which was later given on March 16, 2023. Pursuant to Debtors Motion for Order Authorizing MMT to Disburse Contingency Fee Compensation earned by Debtors for the Benefit of Debtors Estate (Doc. No. 64), the Court entered a Stipulated Order granting in part, and denying in part, Debtors Motion (Doc. No. 98) and on or about March 29, 2023, MMT deposited with Subchapter V Trustee Norman Rouse the aggregate settlement sums in the amount of $3,419,456.35 which, pursuant to the order, are being held pending any further interim or final order of the Court.

**ARTICLE V. FUNDING & ADMINISTRATION OF PLAN**

**5.1    Source of Funding**

*Assignment of Certain Assets of the Estate.* Debtors joint interest in their accounts receivable, work in process, co-counsel contingency fee proceeds from production and recovery attributable to the Debtors related business interests, including sums currently on deposit with the Subchapter V Trustee, shall be assigned to the Subchapter V Trustee for future collection and distribution which assignment shall be for a period of three (3) years or thirty-six (36) months beginning on the effective date of the Plan.

*Property Obtained by Debtors with the Exception of Property Assigned.* The Debtors, as reorganized, will retain all property of the estate, except net production proceeds which Debtors shall directly or indirectly remit to the Subchapter V Trustee. Net proceeds of production shall mean all proceeds received by Debtors which relate to Debtors working interests (whether before or after the confirmation date) from Ramsdell

providing personal services, less related expenses allocable to such production ("**Production Expenses**"). Production Expenses shall mean all costs and expenses of every kind whatsoever incurred for or in connection with realizing proceeds from production.

**5.2**    **Payment of Allowed Claims**

*Deposit Account and Disbursing Agent.* The Subchapter V Trustee shall establish a deposit account for the benefit of payment and distributions to allowed claims of creditors or parties in interest with the deposit account to be funded by Debtors directing, directly or indirectly, or remitting the payment of net proceeds from the assigned assets to the Subchapter V Trustee. Subject to the continuing jurisdiction of the Court, the Subchapter V Trustee shall be the disbursing agent ("**Disbursing Agent**") and shall be authorized to pay allowed claims from funds on deposit in the amount and in the manner as set forth pursuant to any interim Court order or the terms of the confirmed Plan. The Disbursing Agent may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with Code § 345.

*Administration of the Deposit Account.* Subject to the continuing jurisdiction of the Court, the Disbursing Agent shall be authorized and directed to pay allowed claims and interests from funds on deposit in the deposit account in the amounts and in the priority to each class of creditors or interests pursuant to any interim Court order or as established in the Plan or as otherwise allowed as follows:

(a) Payment of those administrative claims, priority tax claims, and other allowed claims entitled to priority pursuant to §§ 507(a)(1)(A), 507(a)(2), or 507(a)(8) of the Code. Pursuant to § 507(a)(8)(C),priority tax claims shall include but not be limited to any post-petition estimated or actual taxes of Debtors as a result of the receipt and deposit of net proceeds from the production and recovery of the assigned accounts receivable, work in process, and co-counsel contingency fee proceeds relating to the Debtors related business interests, including the sums currently on deposit with the Subchapter V Trustee.

(b) Payment to Debtors in such amounts requested by Debtors to fund Debtors personal living expenses and business operational expenses for an initial twelve (12) month period pursuant to Debtors submitting to the Court a motion for an order approving a budget for use of Debtors cash and post-petition income ("**Approved Budget Allowance**").[1]

(c) Following the payment of the Debtors Approved Budget Allowance for personal living and business operational expenses for the initial 12 month period, the Disbursing Agent shall reserve a similar annual sum as a reserve for applicable personal and business operational expenses for the second 12 month period and the third 12 month period ("**Budget Reserves**").

(d) After payments of the allowed claims of creditors or parties in interest as stated in subparagraph (a) above, Debtors Approved Budget Allowance, and funding of the Budget Reserve subject to approval of the continuing jurisdiction of the Court, the Disbursing Agent shall be authorized and directed to set aside seventy-five percent (75%) of the adjusted net balance in the deposit account which shall be utilized to make an interim distribution to all allowed unsecured claims in an amount representing a pro rata share calculated by dividing a creditors allowed claim by the total of all claims included in the class with the initial payment to be made as soon as practical after confirmation of the Plan. No distribution will be made on account of a disputed claim unless such claim is allowed. The Debtors reserve the right to object to claims and the

---

[1] It is Debtors intention to file a separate joint motion for order approving a budget for use of Debtors cash and post-petition income contemporaneous with or immediately following the filing of this Plan.

Debtors shall have the power and authority to settle and compromise any disputed claim with Court approval in compliance with Rule 9019.

*Supplemental Plan Payments.* For a period of three (3) years from the date of confirmation of the Plan, Debtors shall cause all net proceeds from the assigned assets to the Disbursing Agent. The Debtors shall file a report with the Subchapter V Trustee reflecting their combined operations for each year ("**Combined Operations Report**") with the first report to be due thirty (30) days following Debtors filing tax returns for each reporting year. The reports shall represent an annual summary of operations which recaps the income and expenses of the Debtors operations and which shall specify the source and amount of remittance of net proceeds to the Disbursing Agent, including a description of the source, the date paid, and the amount paid. Subject to the continuing jurisdiction of the Court, the Disbursing Agent shall be authorized and directed to pay from the depository account the following:

(a) At the initiation of the second 12 month period and the third 12 month period, payment of any additional administrative expenses of the Debtors Chapter 11 cases allowed pursuant to § 503(b) of the Code.

(b) At the initiation of the second 12 month period and the third 12 month period, payment to Debtors from the Budget Reserves the Debtors Approved Budget Allowance for personal living expenses and business operational expenses.

(c) At the initiation of the second 12 month period and the third 12 month period, from the adjusted net depository account balance as may be increased by any funds received by the Disbursing Agent from the Debtors, seventy-five (75%) of the adjusted net balance to the class of unsecured creditors pro rata. The schedule of payments shall be annual and due thirty (30) days following Debtors filing their Combined Operations Report with the Subchapter V Trustee.

(d) At the termination of the three (3) year Plan period, the Disbursing Agent shall pay any additional administrative expenses of the Debtors Chapter 11 cases allowed pursuant to § 503(b) of the Code and make final distribution of the remaining deposit account to the class of unsecured creditors pro rata.

(e) After final distribution has been made, the Disbursing Agent shall file a report with the court and the Debtors shall cause a final decree to be issued.

## ARTICLE VI. CLASSIFICATION OF CLAIMS AND INTERESTS

**6.1** In this Plan, claims against the Debtors are classified as follows:

(1) **Class 1:** All Allowed Claims Entitled to Priority § 507(a) of the Code Except Administrative Claims under § 507(a)(2) and Priority Tax Claims under § 507(a)(8).

(2) **Class 2**: Allowed Claims Secured by Real or Personal Property of which Ramsdell or RLF have an Ownership Interest In.

(3) **Class 3**: All Non-Priority Unsecured Claims Allowed under § 502 of the Code.

(4) **Class 4**: Equity Interests of the Debtors Including Individual Ramsdell and Property of the Estate.

9

**ARTICLE VII. UNCLASSIFIED CLAIMS OF ADMINISTRATIVE EXPENSES & PRIORITY TAXES**

**7.1** **Unclassified Claims**

Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes and are unclassified claims which under this Plan shall receive the following treatment:

**7.2** **Administrative Expense Claims**

Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

*7.3* **Priority Tax Claims**

Each holder of a priority tax claim will be paid and receive on account of such claim an installment payment in cash of a total value as of the effective date of the Plan, equal to the allowed amount of such claim.

**ARTICLE VIII. TREATMENT OF CLAIMS & INTERESTS UNDER THE PLAN**

**8.1** Claims and interests shall be treated as follows under this Plan:

**Class 1.** • *Winnie Ramsdell Priority Claim Pursuant to § 507(a).* The Plan treatment proposed is to pay the pre-petition claim of $44,760.00 representing pre-petition accrued and unpaid domestic support obligations that existed as of the Petition Date in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed with payment to be made by the disbursing agent. In addition, to the extent there is any post-petition accrual of unpaid domestic support obligations as of the effective date of this Plan, said obligations should be allowed with payment to be made by the Disbursing Agent.

• *IRS.* To the extent there exists any post-petition estimated or actual taxes of Debtors to be collected or withheld which the Debtors are liable in whatever capacity, the Plan treatment proposed is to pay said taxes together with penalties or interest in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed with payment to be made by the Disbursing Agent

**Class 2**. • *IRS*. The Plan treatment proposed is to pay the secured claim of $352,509.05 representing the pre-petition tax liability of Ramsdell secured by a priority Notice of Tax Lien filed by the IRS with payment to be made in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed with payment to be made by the Disbursing Agent.

**Class 3.** • *All Non-Priority Unsecured Claims Allowed under § 502.* This class represents the general unsecured claims not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of class members 3(1) – 3(14):

    Class No. 3(1) Simmons Bank:      $8,212.39
    Class No. 3(2) Millington, Glass, & Love:      $71,378.15

| | |
|---|---|
| Class No. 3(3) The Hershewe Law Firm, PC: | $1,188,075.96[2] |
| Class No. 3(4) Edward Hershewe: (Duplicate) | |
| Class No. 3(5) Alison Hershewe: (Duplicate) | |
| Class No. 3(6) Bank Card Services/Central Trust Bank: | $16,458.27 |
| Class No. 3(7) Bank of America: | $11,028.88 |
| Class No. 3(8) Truist Bank: | $230.00 |
| Class No. 3(9) Paul Wacker: | $10,000.00 |
| Class No. 3(10) Series V – Virage Master, LP: | $3,743,897.39[3] |
| Class No. 3(11) Mediacom: | $247.08 |
| Class No. 3(12) Miller & Associates CPAs & Advisors, LLC: | $9,655.50 |
| Class No. 3(13) Greg Woody: | $9,234.82 |
| Class No. 3(14) Northern Summit Technology: | $38.97 |
| *Total:* | *$5,068,457.41* |

The Plan treatment proposed is for the Disbursing Agent to make periodic interim distributions to all allowed unsecured claims in an amount representing a pro rata share calculated by dividing a creditor's allowed claim by the total of all allowed and undisputed claims included in the class in the percentages and pursuant to a schedule over a period of three (3) years beginning on the effective date of the Plan. Distributions shall be made from the deposit account under the control of the Disbursing Agent and funded by the current depository account balance and any additional funds received by the Disbursing Agent from the Debtors during the three year period. See Article V, Sections 5.1 and 5.2 for more detail.

**Class 4**. • This class represents the interests of the Debtors and property of the estate which is basically represented by Ramsdell's allowable exemptions and RLF's limited equity in business assets and otherwise remains unaffected.

## ARTICLE IX. PROVISION FOR EXECUTORY CONTRACTS & UNEXPIRED LEASES

**9.1**    *Assumption*. The Debtors assume the following executory contracts, unexpired leases, and service agreements as of the effective date of the Plan.

- Ben Steele Properties, LLC
- Thomson Reuters Westlaw

## ARTICLE X. LIQUIDATION ANALYSIS & FEASIBILITY

**10.1    Liquidation Analysis**

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and equity interest holders would receive in a Chapter 7 liquidation. If this bankruptcy case were converted to Chapter 7 liquidation, the Chapter 7 trustee would be required to dispose of Debtor's assets in a prompt manner under circumstances amounting to a forced sale liquidation. The Chapter 7 estate would incur additional fees and costs and would delay any payment to creditors that would otherwise not be incurred under the Plan. In addition, the Chapter 7 trustee is entitled to statutory fees based upon the value of the assets administered, and will require assistance of professionals (accountants, lawyers, auctioneers, or sale personnel) who will be entitled to be paid for their services as a cost of administration of the liquidating estate. In addition, in

---

[2] Class Nos. 3(3), 3(4), and 3(5): Debtors filed an objection to the Proof of Claims asserting they are unsecured claims and also duplicated.

[3] Debtors filed an objection to the Proof of Claims asserting they are unsecured claims.

the event of conversion, upon information and belief, Ramsdell would be free to proceed to elicit new plaintiff cases either individually or in association with co-counsel and continue to work on any unliquidated claims and provide his personal services and any post-conversion income would not be property of the estate for the Chapter 7 Trustee to administer.

Notwithstanding the Debtors position that in the event of conversion that the interest of Ramsdell and RLF in the contingency fee agreements are not the property of the estate, it is appropriate to disclose with limitations the current cases of which Ramsdell and RCs are associated with or co-counsel in. Ramsdell and RLF have a joint interest as associated or co-counsel in contingency fee agreements with Morgan & Morgan P.A. ("**MM**") in a single case that has been merged with another that remains pending in the State of Florida. The mutual clients/plaintiffs are seeking damages arising from an interstate trucking accident. The case is subject to a separate order of the applicable state court granting motions seeking confidentiality of the contingency agreements and as a result the fee agreements are under seal with prohibition against viewing without an order of the court. The case is in the preliminary discovery stage. As of the publication date of this Plan, giving a value would be in violation of the agreements, the court order, and applicable disciplinary Rules of Conduct governing the Bar. Because of the nature of personal injury litigation, any opinion of value or recovery is pure speculation, and the interest remains unliquidated. In a second case, Ramsdell and RCS have a fee agreement as associated or co-counsel with an attorney in Illinois on a separate case. The case remains unresolved and unliquidated. Lastly, in another case, Ramsdell is associated with MM and Missouri attorney Grant Rahmyer involving an action based on bad faith arising from a previous judgment of approximately $65,000,000.00 relating to a motor vehicle crash that occurred in 2014. The bad faith action is currently in the preliminary discovery stage and remains unliquidated.

**10.2    Feasibility**

Under this Plan, it is proposed that priority payments and secured payments be paid upon the effective date from the deposit account and during the subsequent thirty-six (36) months Ramsdell and RLF continue to provide their specialized services to supplement future deposits to the Disbursing Agent for enhanced pro rata disbursements to the unsecured creditor class. Confirmation of this Plan (as opposed to conversion) will allow Ramsdell and RLF to continue to provide professional personal services and potentially the recovery of substantial sums to be used to supplement the depository account over the three year period. In addition, confirmation of the Plan and approval of the Approved Budget Allowance will provide an opportunity to place Debtors in the position for obtaining future personal service contracts during the three year period for the benefit of the estate.

**ARTICLE XI. GENERAL PROVISIONS**

**11.1    Binding Effect** The rights and obligations of any entity named or referenced to in this Plan will be binding upon, and inure to the benefit of the successors or assigns of such entity.

**11.2    Captions** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**11.3    Controlling Effect** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Missouri govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**11.4    Severability** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**11.5** **Modification of Plan** The Plan proponent may seek to modify the Plan at any time within three (3) years after confirmation pursuant to Section 1193(c) of the Code which permits the Debtor to modify the Plan after confirmation provided the Plan meets the requirements of Section 1191(b) and the Plan has not been substantially consummated; and circumstances warrant such modification, and the Court authorizes the proposed modifications after Notice and a Hearing.

**11.6** **Retention of Jurisdiction** The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1127; (iii) to hear and allow all applications for compensation to professionals and other administrative expenses; (iv) to resolve all issues regarding claims objections and issues arising from the assumption/rejection of executory contracts or leases; and (v) to adjudicate any cause of action which may exist in favor of the Debtor including preference and fraudulent transfer causes of action.

**ARTICLE XII: DISCHARGE & DEFAULT**

**12.1** **Discharges**

If the Debtors Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtors will not be discharged from any debt:

> (i) imposed by this Plan; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtors Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtors will not be discharged from any debt:

> (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**12.2** **Default**

If any creditor or party in interest claims a default with respect to any act of the Debtors or the Subchapter V Trustee, the relevant creditor may send a written notice of default to the Debtor and the Subchapter V Trustee. If the Debtor and the Subchapter V Trustee fails to cure within fourteen (14) days of such notice or fails to seek relief from the bankruptcy court, the relevant creditor shall be entitled to pursue any rights and claims it may have under state law.

**LIST OF EXHIBITS TO PLAN**

- Exhibit A:    Summary of Ramsdell and RLF Assets and Valuation
- Exhibit B:    Income Recap for 2019, 2020, and 2021
- Exhibit C:    Summary of Monthly Operating Reports

Dated: April 6, 2023

*Approved as to form and content.*

By: */s/ Daniel T. Ramsdell*
Daniel T. Ramsdell, Individually

By: */s/ Daniel T. Ramsdell*
Daniel T. Ramsdell, Sole Member &
Managing Member of Ramsdell Law Firm, LLC

DAVID SCHROEDER LAW OFFICES, P.C.

By: */s/ David E. Schroeder*
David E. Schroeder                    #32724
3804 S. Fremont Ave.
Springfield, MO 65804
Telephone: (417) 890-1000
Fax: (417) 590-8600
bk1@dschroederlaw.com
*Attorney for Debtors*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the Court's Electronic Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties who have requested notice but are not participating in the ECF System, pursuant to instructions appearing on the electronic filing receipt received from the U.S. Bankruptcy Court this 6th day of April, 2023.

By: */s/ David E. Schroeder*
David E. Schroeder                    #32724