**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | Case No.    22-60684 |
| | (Jointly Administered) |
| Daniel T. Ramsdell, | Chapter 11 |
| Debtor. | |
| In re: | Case No.    22-60685 |
| | (Jointly Administered) |
| Ramsdell Law Firm, LLC, | Chapter 11 |
| Debtor. | |

**OBJECTION TO CONFIRMATION OF SMALL BUSINESS PLAN OF
REORGANIZATION DATED APRIL 6, 2023**

Creditors Edward Hershewe, Alison Hershewe and Hershewe Law Firm, P.C. ("Hershewe Claimants") herein object to and oppose confirmation of the Debtors Subchapter V Small Business Plan of Reorganization Dated April 6, 2023 (the "Plan") (ECF # 114) filed by Daniel T. Ramsdell and Ramsdell Law Firm, LLC ("Debtors"). Hershewe Claimants' objections are set forth in the following memorandum of points and authorities and any exhibits attached or referenced therein. For these reasons, and any reasons set forth in opposition to confirmation set forth by other creditors or the United States Trustee, Hershewe Claimants respectfully request that this Court deny confirmation of the Debtors' Plan.

I.    **INTRODUCTION AND SUMMARY**

Hershewe Claimants are the holders of a claim that is the subject of dispute. Debtors concede that Hershewe Claimants hold a Class 3 non-priority unsecured claim in the amount of $1,188,075.96 (Claims Nos. 3, 4 and 5; 4 and 5 being duplicates). Hershewe Claimants take the position that they have Class 2 allowed claims secured by real or personal property of which Debtors have an ownership interest in. The security is based on an assignment of accounts

receivable of attorneys' fees of Debtors, which Conditional Assignment is attached to the original Proof of Claim (ECF #  ) and the Amended Proof of Claim (ECF #  ).  For some unexplained reason, the Debtors also have failed to include the full amount of the judgment which is the basis for the claims.   The original Proof of Claim was $1,217,715.16.  The Amended Proofs of Claim, filed May 5, 2023 (ECF # Claims 5-1, 6-2 and 7-2) included updated interest, in the amount of $1,248,837.16, and were also secured by the same Conditional Assignment.  The Conditional Assignment attached to the Proofs of Claim which gives rise to the security interest in the attorneys' fees received by the Debtors was a document executed by the Debtors.  The Debtors admitted to the signing and validity of the Conditional Assignment, which is the basis of the secured claim.  See Objection of Debtors to Proof of Claims Filed by Hershewe (ECF #111 and 111-2, para. 10).

Hershewe Claimants reject the Plan and opposes confirmation because (a) Debtors have not carried their burden of showing that the Plan meets the requirements of 11 U.S.C. Section 1191, which incorporates generally the requirement of 11 U.S.C. Section 1129(a), in that the Plan is not feasible or workable; (b) the Plan is not proposed in good faith; and (c) the Plan is not fair and equitable.

## II.     DEBTORS HAVE FAILED TO SHOW THE PLAN IS FEASIBLE OR WORKABLE

Under 11 U.S.C. Section 1129(a)(11), the Court must find that the Plan is workable or feasible, that is, not likely to be followed by liquidation or the need for further reorganization.  *Danny Thomas Props. II Limited P'ship v. Beal Bank*, S.S.B., 241 F.3d959, 962 (8th Cir. 2001).  Here, the Debtors have failed to show that the Plan is feasible, because it fails to identify the assets of the Debtors' estate which will be administered, and which are going to fund the Plan distributions.

The primary asset of the Debtors is their interest in personal injury contingency fee claims, which are set forth in lawsuits filed in various places around the country, or which have been "signed up" by Debtors but have not yet been filed. Debtors have refused at every opportunity to disclose the substance of these contingency fee cases, including the names of the injured claimants, the location of the filings, the agreements with co-counsel, or the nature of the claims. Debtors have claimed that disclosure of fee agreements with clients and co-counsel is prevented by attorney-client privilege, but this position is not taken in good faith, as it is virtually hornbook law that such fee agreements are not protected by the attorney-client privilege, under Missouri law, law of other states and federal authority. See State ex rel. *Koster v. Cain*, 383 S.W.3d 105, 119 (Mo. App. W.D. 20120); *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995).

As pointed out in the Objection to Confirmation filed by the United States Trustee, this failure to provide any information about the contingent fee cases may have served Debtors well when defending against pre-petition collections by Hershewe Claimants and Virage, but "it is an anathema to the bankruptcy system, which hinges on transparency and robust disclosure." U.S. Trustee's Objection at 6 (ECF # 147).

Not only does the Plan fail to reliably inform the creditors as to what assets are available it provides for payouts of proceeds of personal injury claims for a three-year period following confirmation, after payment of priority claims and the budget allowance, without purporting to tell creditors how and when those claims will be litigated. This gives Debtors an incentive to withhold identity of claims and delay resolution and recoveries on personal injury claim until after the three-year period runs. This lack of disclosure of any basic information or basic details of the contingent fee claims makes it impossible to determine whether the Plan is feasible or workable, or whether

there is a reasonable likelihood that they will be able to meet the test of feasibility for Subchapter V cases in 11 U.S.C. Section 1191(c)(3).

Further, as pointed out above, Hershewe Claimants have fully secured claims under 11 U.S.C. Section 1111(b), but the Plan classifies the Hershewe Claims as unsecured. This issue is unresolved, but the Plan assumes unsecured status and makes no provision for the payment of Hershewe claims as secured, if they are so ruled. The same is true of the claims of Virage.

By putting forth a Plan without providing any details as to the primary assets of the Debtors, how they will be turned into cash and how much money can be reasonably expected to come into the estate within the three-year period of the Plan, Debtors have let their refusal to be transparent render the Plan unfeasible and unworkable. If the Plan in this case involved a farming operation, but the Debtor sought reorganization without disclosing the location of the farms, the acreage, the sharecropping arrangements, the amount of expected harvest, projected prices, contracts with grain buyers or any other details of farming operations, no one would take the Plan seriously. There is nothing about law practice that makes it different for the purpose of providing basic details about the business which is the subject of the Plan, to see about feasibility. Debtors have failed to show the Plan is workable or feasible under Sections 1129(a)(11) and 1191(c)(3).

### III. DEBTORS HAVE NOT MET THE GOOD FAITH REQUIREMENT

In putting forth a Plan without providing any information about the primary assets of the business, or how and when they would be liquidated to fund the Plan, or whether and how they would be made available within the three year period the Plan is in operation, Debtors have failed to meet the good faith requirement. There is no showing that the Plan serves Chapter 11's purpose of maximizing the value of the estate for the benefit of creditors, rather than to benefit the Debtors. *See In Re First Conn. Consulting Group,* 579 B.R. 673, 686-87 (Bankr. D. Conn 2018). In

addition, the Debtors have chosen to make only Daniel Ramsdell and Ramsdell Law Firm the Debtors and have not included as Debtors in their bankruptcy other wholly owned entities Ramsdell Consulting, LLC. or APITLA.  In testimony before this Court on March 16, 2023, during the hearing to approve David Schroeder as attorney for the Debtors, Daniel Ramsdell testified as to the joint bank account which collects funds from all sources and then distributes commingled Debtor and non-Debtor funds for various reasons, including "owners' draw," without any reconciliation or attempt to segregate the funds.  As Mr. Ramsdell testified, since he owns all of the entities 100%, he feels he is entitled to take what he needs in terms of draw.  Mr. Ramsdell testified that he has no accountant preparing the books, records or tax returns of the Debtor and non-Debtor entities from January, 2022 forward.  The Debtors thus have no reliable financial information from which it can be determined whether Debtor funds are being used to cover the expenses of non-Debtors like Ramsdell Consulting or APITLA, as they almost certainly are doing.  The totality of the circumstances points to maximization of Debtors' and non-Debtors' interests, and not those of the creditors.

IV.  **THE LACK OF A COGENT LIQUIDATION ANALYSIS FAILS THE BEST INTEREST OF CREDITORS' TEST**

The Liquidation Analysis of the Plan is found in Section 10.1, Doc. # 114, p.11 of 14.  The Debtors state that to confirm the Plan, "the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and equity interests would receive in a Chapter 7 liquidation."  This finding cannot possibly be made, and this standard cannot be met, due to the Debtors' refusal to inform the creditors of the details of the contingency fee cases and clients that they have.  Section 10.1 refers to a single Morgan and Morgan case that has been merged with another.  The same section refers

to a fee agreement with an attorney in Illinois on a separate case. Finally, Section 10.1 refers to another case involving a bad faith claim arising from a judgment in the amount of $65,000,000. No location is given as to this case. It apparently has recently been settled and yet the Debtors still will not provide any information as to the amount of the settlement or the fee sharing agreement with the other attorneys. This refusal of the Debtors to provide basic information has required Hershewe Claimants to subpoena records from Rahlaw of Springfield, co-counsel in this bad faith case. Rahlaw would not provide the requested information on value pursuant to the subpoena. On May 12, 2023, Hershewe Claimants have filed a Motion to Compel and to Enforce Subpoena in an attempt to get basic information about this lawsuit, and whether there are any other claims that they are handling together with Debtors. Hershewe Claimants have also served a Request for Production of Documents on the Debtors, seeking the same kind of information.

In addition, there is no statement in Section 10.1 that the list is exhaustive. There is quite literally no way to read this section and even begin to formulate a way to conduct a liquidation analysis. The Plan thus fails the best interests of the creditors' test of Sections 1191(b) and 1129(a)(7) and confirmation should be denied.

## V.    CONCLUSION

For the foregoing reasons, Hershewe Claimants respectfully request that this Court deny confirmation of the Debtors' Plan of Confirmation on the terms proposed.

Respectfully submitted,

BUCHANAN, WILLIAMS & O'BRIEN, P.C.

By: /s/ James V. O'Brien
Andrew S. Buchanan, 53824
James V. O'Brien, 31161
BUCHANAN, WILLIAMS & O'BRIEN, P.C.
1105 E 32nd St., Suite 5
Joplin, Mo. 64804
Telephone: 417-623-8220
FAX: 417-781-9706

*Attorneys for Hershewe Creditors*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Western District of Missouri, Bankruptcy Division by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record on this 12th day of May, 2023

By: /s/ James V. O'Brien